UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL SCHWARTZ,<br><br>              Plaintiff,<br><br>        -against-<br><br><br>ANDERSON KILL P.C., GEORGE ANDERSON,<br>and DONA KAHN,<br><br>                    Defendants. | Case No. 23-cv-7204 (DLC)<br><br><br>*Oral Argument Requested* |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION FOR PARTIAL DISMISSAL AND
THEIR MOTION TO DISQUALIFY PLAINTIFF'S ATTORNEY**

LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY 10022
Telephone: (212) 583-9600

*Attorneys for Defendants*

*Of Counsel:*
Jean L. Schmidt
Emily C. Haigh

## TABLE OF CONTENTS

PAGE

INTRODUCTION ................................................................................................... 1

FACTS BASED ON ALLEGATIONS IN THE COMPLAINT .................................................. 3

MOTION TO DISMISS ............................................................................................ 6

    I.     12(B)(6) STANDARD .......................................................................... 6

    II.    PLAINTIFF'S FEDERAL AND STATE SEX DISCRIMINATION
          CLAIMS SHOULD BE DISMISSED ..................................................... 6

    III.   PLAINTIFF'S SEX DISCRIMINATION CLAIM UNDER CITY LAW
          SHOULD BE DISMISSED .................................................................. 10

    IV.   DONA KAHAN AND GEORGE ANDERSON SHOULD BE
          DISMISSED AS DEFENDANTS ......................................................... 11

    V.    THE COURT SHOULD DENY PLAINTIFF ANOTHER
          OPPORTUNITY TO AMEND HIS COMPLAINT ........................................ 13

MOTION TO DISQUALITY PLAINTIFF'S COUNSEL ......................................................... 14

CONCLUSION ..................................................................................................... 17

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alvarado v. United Hospice, Inc.*,
   631 F.Supp.3d 89 (S.D.N.Y. 2022) ......................................................................9

*Andrus v. Dooney & Bourke, Inc.*,
   139 F.Supp.3d 550 (D.Conn. 2015)......................................................................9

*Ayers v Bloomberg, L.P.*,
   165 N.Y.S.3d 554 (2nd Dep't. Mar. 16, 2022) .......................................................11

*Barbosa v. Continuum Health Partners, Inc.*,
   716 F. Supp. 2d 210 (S.D.N.Y. 2010).................................................................10

*Belton v. Borg & Ide Imaging, P.C.*,
   512 F.Supp.3d 433 (W.D.N.Y. 2021) .................................................................6, 7

*Bostock v. Clayton Cnty., Georgia*,
   140 S.Ct. 1731 (2020)......................................................................................7

*Cerrato v. Durham*,
   941 F. Supp. 388 (S.D.N.Y. 1996) ....................................................................13

*Chima v. KX Technologies, LLC*,
   Case No. 3:21-cv-00801 (JCH), 2022 WL 13682064 (D.Conn. 2022) .....................9

*Cohn v. KeySpan Corp.*,
   713 F. Supp. 2d 143 (E.D.N.Y. 2010) ................................................................11

*Cuoco v. Moritsugu*,
   222 F.3d 99 (2d Cir. 2000)...............................................................................13

*De Jesus v. Sears, Roebuck & Co., Inc.*,
   87 F. 3d 65 (2d Cir. 1996).................................................................................6

*De La Pena v. Metropolitan Life Ins. Co.*,
   953 F. Supp. 2d 393 (E.D.N.Y. 2013) ..................................................................6

*Estate of Dina Ehrlich v. David Wolf and Michael C. Wimpfheimer, Esq.*,
   2013 WL 11236209 (N.Y. Sup. Ct. Dec. 06, 2013) .............................................15

*Douglas v. Abrams Children Books*,
   2014 WL 12909009 (S.D.N.Y. Sept. 26, 2014)...................................................14

# TABLE OF AUTHORITIES
### (CONTINUED)

Page(s)

*Ellis v. Chao*,
    336 F.3d 114 (2d Cir. 2003)........................................................................................13

*Falk v. Gallo*,
    2010 N.Y. Slip Op 03864, 73 A.D.3d 685, 901 N.Y.S.2d 99 (2d Dep't 2010)......................15

*Feingold v. New York*,
    366 F.3d 138 (2d Cir. 2004).......................................................................................11

*Fulfree v. Manchester*,
    945 F. Supp. 768 (S.D.N.Y. 1996) ..............................................................................16

*Garcia v. Barclays Cap., Inc.*,
    281 F. Supp. 3d 365 (S.D.N.Y. 2017)...........................................................................8

*Gong v. City Univ. of New York*,
    No. 18 CIV. 3027 (LGS), 2019 WL 952340 (S.D.N.Y. Feb. 27, 2019)...............................8

*Kaplan v. Lebanese Canadian Bank, SAL*,
    999 F.3d 842 (2d Cir. 2021).........................................................................................3

*Leykis v. NYP Holdings, Inc.*,
    899 F. Supp. 986 (E.D.N.Y. 1995) ..............................................................................12

*Malena v. Victoria's Secret Direct, LLC*,
    886 F. Supp. 2d 349 (S.D.N.Y. 2012)..........................................................................11

*McGowan v. Stanley*,
    2023 WL 2118084 (S.D.N.Y. 2023) (Cote, J.) .............................................................15

*Mesias v. Cravath, Swaine & Moore LLP*,
    106 F. Supp.3d 431 (S.D.N.Y. 2015)...........................................................................8

*Noval Williams Films LLC v. Branca*,
    128 F. Supp. 3d 781 (S.D.N.Y. 2015)..........................................................................17

*Perry v. NYSARC, Inc.*,
    424 F. App'x 23 (2d Cir. 2011) ....................................................................................5

*Presser v. M. Spiegel & Sons Oil Corp.*,
    106 A.D.2d 560, 483 N.Y.S.2d 368 (1984) ...................................................................17

*Price Waterhouse v. Hopkins*,
    490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)...................................................7

## TABLE OF AUTHORITIES
### (CONTINUED)

Page(s)

*Rizzuto v. De Blasio*,
17-CV-7381 (ILG)(ST), 2019 WL 1433067 (E.D.N.Y. Mar. 29, 2019) ....................14, 15, 16

*Robinson v. Am. Int'l Grp., Inc.*,
No. 008 Civ. 1724 (LAK), 2009 WL 3154312 (S.D.N.Y. Sept. 30, 2009) ..............................8

*Romano v. A360 Media, LLC*,
No. 1:20-cv-08988 (LTS)(OTW), 2023 U.S. Dist LEXIS 10355 (S.D.N.Y.
Jan. 20, 2023) ....................................................................................................................10

*Schanfield v. Sojitz Corp. of America*,
663 F. Supp. 2d 305 (S.D.N.Y. 2009) .................................................................................11

*Smalls v. Amazon.com Servs. LLC*,
No. 20-CV-5492 (RPK)(RLM), 2022 WL 356432 (E.D.N.Y. Feb. 7, 2022) ..........................8

*Tarshis v. Riese Org.*,
211 F.3d 30 (2d Cir. 2000), *dismissed in part,* 195 F. Supp. 2d 518 (S.D.N.Y.
2002), *aff'd,* 66 F. App'x 238 (2d Cir. 2003) ............................................................6

*Winston v. City of N.Y.*,
No. 12-CV-0395 (FB)(WP), 2013 WL 4516097 (E.D.N.Y. Aug. 23, 2013) ..........................7

*Zarda v. Altitude Express, Inc.*,
883 F.3d 100 (2nd Cir. 2018)................................................................................................7, 9

**Statutes**

American with Disabilities Act...............................................................................................1, 14

Title VII of the Civil Rights Act of 1964.....................................................................1, 6, 10, 13

New York City Human Rights Law.................................................... *passim*,1, 10, 11, 14

**Other Authorities**

Federal Rules Civil Procedure 12(b)(6) and 12(b)(1)............................................................1, 3, 6

Federal Rules Civil Procedure 11 and 15(a) .............................................................................13

New York Rules of Professional Conduct 3.7(a).......................................................1, 14, 16, 17

Defendants Anderson Kill P.C. ("Anderson Kill" or the "Firm"), George Anderson ("Mr. Anderson"), and Dona Kahn ("Ms. Kahn") (together "Defendants"), by and through their counsel Littler Mendelson, P.C., submit this memorandum of law in support of their motion to partially dismiss Plaintiff's Amended Complaint ("Complaint" or "Cplt.") pursuant to F. R. Civ. P. 12(b)(6) and 12(b)(1) and to disqualify Plaintiff's counsel from continuing to represent Plaintiff in this matter, as she is a witness and therefore barred under the advocate-witness rule.[1]

## INTRODUCTION

Plaintiff Paul Schwartz ("Plaintiff" or "Mr. Schwartz"), the former Chief Financial Officer ("CFO") at Anderson Kill, alleges that Defendants discriminated against him based on his sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL") (Counts I, III and IV); discriminated against him based on his alleged disabilities by failing to accommodate his disabilities in violation of the American with Disabilities Act ("ADA"), NYSHRL and NYCHRL (Counts II and V); and retaliated against him for requesting accommodation in violation of the ADA, NYSHRL, and NYCHRL (Count VI).

Defendants move to dismiss Plaintiff's sex discrimination claims and all claims against individual defendants Ms. Kahn and Mr. Anderson, and to disqualify Tiffany Ma ("Ms. Ma") and her law firm from representing Plaintiff.

First, Plaintiff's Complaint fails to allege facts sufficient to state a claim that his sex played any role in his employment. Plaintiff's one claim related to his sex is that the Firm denied his and other male employees' requests to work from home out of an "outdated stereotype that men must put in 'face time' physically in the office." However, his pleading shows that Anderson Kill

---

[1] See Rule 3.7 of the New York Rules of Professional Conduct.

granted his request to work from home three separate times and treated him better (not worse) than women who requested, but were denied, permission to work from home. This obliterates Plaintiff's sex discrimination claim. Further, the alleged female comparators Plaintiff lists in his Complaint are not similarly situated to him and thus the fact that they may have been treated differently does not save his sex discrimination claim from dismissal.

Second, Plaintiff does not allege sufficient facts to state a claim for individual liability against the individual defendants, Ms. Kahn and Mr. Anderson. The Complaint merely names them as defendants and fails to allege facts to show that either Ms. Kahn or Mr. Anderson participated in any discriminatory act.

Finally, because Plaintiff's counsel Ms. Ma is a necessary witness regarding the key factual dispute in this matter, she cannot prosecute Plaintiff's claims. Plaintiff admits that he decided to cease communication with the Firm and to designate Ms. Ma to be his spokesperson during the interactive accommodation process from May 2022 until the breakdown of the process in June 2022. Plaintiff also admits that it was only Ms. Ma who communicated with the Firm throughout that process. Consequently, Ms. Ma will be a necessary witness in this matter on the most significant and contested issues of fact, and the rules of professional conduct bar her from representing Plaintiff.

Thus, as shown herein, the Court should dismiss Plaintiff's sex discrimination claims, Counts I, III and IV, and the claims against the Individual Defendants in Counts II, V and VI, as well as disqualify Ms. Ma from acting as counsel for plaintiff in this matter.[2]

---

[2] The only claims Defendants do not move to dismiss are Plaintiff's disability discrimination claim, failure to accommodate claim and retaliation claim for requesting accommodation claim against Anderson Kill (Counts II, V and VI).

### FACTS BASED ON ALLEGATIONS IN THE COMPLAINT[3]

Mr. Schwartz served the Firm as Controller (2002), Director of Financial Services (2007), and CFO from approximately 2015 until his employment ended. (Cplt. ¶ 16.) In March 2018, Defendant George Anderson became the Executive Director. (Cplt. ¶ 35.)

From March 11, 2020, through June 2021, when all employees were returning to the workplace amidst the COVID-19 pandemic, Anderson Kill accommodated Plaintiff's request to work from home, despite his team's return to the office. (Cplt. ¶¶ 42-43.) Plaintiff's work-from-home accommodation request was based on his "age and health circumstances." *Id.*

In June 2021, Plaintiff agreed to return physically to the office one day per week until Labor Day 2021, after which he agreed to come into the office three days per week. (Cplt. ¶ 44.)

On July 28, 2021, the Firm announced that staff (which included Plaintiff) would return to the office 3 days a week in September in "Safe Return Phase Three." (Cplt. ¶ 45.)

On February 4, 2022, Mr. Schwartz fell on a Friday night taking out the garbage at his home and hit his head, and he later was diagnosed with post-concussion syndrome. (Cplt. ¶ 53.) As a result of the fall, Plaintiff suffered a physical injury and neurological injury. (Cplt. ¶ 12.)

On May 9, 2022, Plaintiff submitted a reasonable accommodation request in a note stating that he had "Mild Neurocognitive Disorder Due to Traumatic Brain Injury and Adjustment Disorder with Anxiety" and requesting nine itemized accommodations including "[t]he option to work remotely for the foreseeable future," reduced hours to 15 hours per week, and a new dedicated assistant to assist him with email correspondence to limit his email correspondence to twelve emails per day. (Cplt. ¶ 65.) Plaintiff also requested, as an accommodation, that all

---

[3] As required, and solely for purposes of this motion, Defendants acknowledge that the Court must accept Plaintiff's nonconclusory fact allegations as true. *See Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (in reviewing a Rule 12(b)(6) dismissal, court "must accept as true all nonconclusory factual allegations in the complaint").

communications with him about his accommodation must cease and that all such communications be handled directly with his counsel Ms. Ma. (Cplt. ¶ 65(i).) Ms. Ma is counsel for Plaintiff in this action.

On May 12, 2022, Anderson Kill told Ms. Ma "[w]e determined that the CFO position was such that the essential functions of it could not be fully performed if we granted the requested accommodations." (Cplt. ¶ 67.) The Firm offered Mr. Schwartz a position as billing manager (Cplt. ¶ 68), subject ultimately to clarification "as to what his disabilities are [as] of now and whether he needs any accommodations so we can determine if they are reasonable and can enable Paul to fully function in the job." (Cplt. ¶ 85.)

On May 17, 2022, Ms. Ma notified Anderson Kill that Plaintiff was no longer limited to working 15 hours and could now work 35 hours per week but still needed additional administrative support and other itemized accommodations. (Cplt. ¶ 73.) On May 26, 2022, Anderson Kill told Ms. Ma, "Regrettably, AK has come to the conclusion, after many hours spent by management of the firm considering the facts you and the Doctor have supplied, that Paul, even with reasonable accommodations, cannot perform the essential elements of the job…" (Cplt. ¶ 77.)

On May 27, 2022, Ms. Ma told Anderson Kill that Plaintiff would consider a new position as Billing Manager. (Cplt. ¶ 78.) On June 3, 2022, Anderson Kill stated "we will take steps to fill the Billing Manager position by the end of the business [day] Wednesday, June 8, 2022, if Paul does not report to work to start the billing job that Wednesday morning. If he declines the offer of Billing Manager, we will deem him to have resigned and remove him from the payroll, effective Thursday June 9, 2022." (Cplt. ¶ 81.)

On June 13, 2022, Ms. Ma sent Anderson Kill a note from Mr. Schwartz's doctor, dated June 9, 2022, that asked that Plaintiff be given a work-from-home accommodation for at least two

months. (Cplt. ¶ 87.) The next day, on June 14, 2022, Anderson Kill granted Plaintiff's request to work from home for two months.[4]

On June 20, 2022, Anderson Kill followed up with Ms. Ma and stated that if the Company did not hear from Ms. Ma by Friday June 24, 2022, the Company would assume Plaintiff was not accepting the Billing Manager position. (Schmidt Decl. Ex. A at pg. 7 of 8.) Ms. Ma never responded to Anderson Kill. *Id.* After not hearing from Ms. Ma or Plaintiff for ten days despite the Firm's follow up, Anderson Kill assumed Plaintiff was not intending to return to the Company. Thus, on June 24, 2022, Plaintiff's employment with the Company ended. (*Id.* at pg. 8 of 8 and Cplt. ¶ 90.)

Plaintiff's and Ms. Ma's next course of action was to file a complaint with the EEOC on November 9, 2022 (Cplt. ¶ 3) and then the instant lawsuit, which alleges Anderson Kill did not fulfil its obligations to accommodate Plaintiff's alleged disabilities.

Throughout the accommodation period, including Plaintiff's final abandonment of the interactive process, Plaintiff required that all communication be with his attorney, Ms. Ma. Anderson Kill granted Plaintiff's accommodation request. Ms. Ma directed all her communication to Ms. Kahn, in-house counsel for Anderson Kill, who communicated directly with Ms. Ma on behalf of Firm management about the accommodation process. (Cplt. ¶¶ 66, 67, 81, 82, 84.)

---

[4] Although a court must generally accept as true all the factual assertions in the complaint, "there is a narrow exception to this rule for factual assertions that are contradicted by the complaint itself, by documents upon which the pleadings rely, or by facts of which the court may take judicial notice." *Perry v. NYSARC, Inc.,* 424 F. App'x 23, 25 (2d Cir. 2011) (*citing Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1095 (2d Cir. 1995). Ms. Ma's final correspondence with Anderson Kill, the Firm's response, and Ms. Ma's eventual abandonment of the interactive process are attached as Ex. A to the Declaration of Jean L. Schmidt, sworn to December 1, 2023 ("Schmidt Decl."). The Firm wrote on June 14, 2022, "AK [Anderson Kill] is agreeable to granting the sole accommodation of working for 2 months remotely …" *Id.* at pg. 5 of 8. Ms. Ma never responded.

<u>**MOTION TO DISMISS**</u>

**I.      12(B)(6) STANDARD**

In evaluating a motion to dismiss under Rule 12(b)(6), the "district court . . . must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." *Tarshis v. Riese Org.*, 211 F.3d 30, 35 (2d Cir. 2000), *dismissed in part,* 195 F. Supp. 2d 518 (S.D.N.Y. 2002), *aff'd,* 66 F. App'x 238 (2d Cir. 2003). However, "a complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." *De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F. 3d 65, 70 (2d Cir. 1996). "Merely reciting the elements that need to be established in order to make out the Plaintiffs' case, or assertions of conclusions without sufficient factual background to make such conclusory statements plausible will not, on their own, be sufficient [to state a claim]." *De La Pena v. Metropolitan Life Ins. Co.*, 953 F. Supp. 2d 393, 405 (E.D.N.Y. 2013).

**II.     PLAINTIFF'S FEDERAL AND STATE SEX DISCRIMINATION
         CLAIMS SHOULD BE DISMISSED**

Plaintiff's sex discrimination claims under Title VII and NYSHRL should be dismissed because there is no allegation that Plaintiff's sex played a role in any decision affecting his employment. (Counts I and III.)

At the pleading stage, a plaintiff claiming discrimination under Title VII and NYSHRL "must show that (1) [he] is a member of a protected class; (2) [he] was qualified for the position held; (3) [he] suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination." *Belton v. Borg & Ide Imaging, P.C.*, 512 F.Supp.3d 433, 441 (W.D.N.Y. 2021) "[T]o survive a motion to dismiss, a plaintiff must still plausibly allege that (1) the employer took adverse action against [him], and (2) [his] race, color,

religion, sex, or national origin was a motivating factor in the employment decision." *Id. (citing Vega v. Hempstead Union Free Sch. Dist.,* 801 F.3d 72, 87 (2d Cir. 2015)).

In the absence of any direct evidence of discriminatory intent, a plaintiff may raise an inference of discrimination by demonstrating that similarly situated employees of a different gender were treated more favorably. *Winston v. City of N.Y.*, No. 12-CV-0395 (FB)(WP), 2013 WL 4516097 (E.D.N.Y. Aug. 23, 2013). To do so, a plaintiff must show that he was similarly situated in all material respects to the individuals with whom he seeks to compare himself, and that the plaintiff and comparator's situations bear a reasonably close resemblance. *Id.*

Here, Plaintiff's sex discrimination claim rests on his belief that his sex played a role in Anderson Kill's desire for him to work in the office because of an "outdated stereotype that men must put in 'face time' physically in the office." (Cplt. ¶ 52.)[5] (*See* Cplt. ¶¶ 42-52 for all allegations regarding Plaintiff's sex discrimination claim.) To support his sex discrimination claim, Plaintiff lists individuals he contends are proper comparators to illustrate that men (more than woman) were required to be in the office and denied work-from-home requests.

As an initial matter, Plaintiff admits in his Complaint, or incorporates through reference, that Anderson Kill granted his requests to work from home three separate times.[6] In fact, that was Plaintiff's last accommodation request (which was granted) before he abandoned the interactive

---

[5] Plaintiff does nothing to explain the basis for his sex stereotyping theory or that this indeed is a known sex stereotype for males or that Defendants applied their neutral in-office work policy differently because of this stereotype. It is true that sex stereotyping is a line of case law in the United States – *e.g. see Price Waterhouse v. Hopkins,* 490 U.S. 228, 243 n.9, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) through *Bostock v. Clayton Cnty., Georgia,* 140 S.Ct. 1731 (2020) – but Plaintiff's pleading does not plead any facts to suggest sex stereotyping played a role in his employment. *See Zarda v. Altitude Express, Inc.,* 883 F.3d 100, 120 (2nd Cir. 2018) (In order to show reliance on sex stereotypes you must show that the behavior or trait at issue would have been viewed more or less favorably if the employee were of a different sex.) Nothing in the Complaint suggests the Firm applied its neutral policy in a way that was more or less favorable based on gender. (Cplt. ¶ 45.)

[6] *See* Cplt. ¶¶ 42-43 (work-from-home accommodation granted in 2020 and 2021); ¶ 65 (in 2022 despite the Firm informing Ms. Ma it could not fully accommodate his requests for the CFO position, Plaintiff does not allege he ever returned to the office or that his request to work remotely was denied); fn 4 *supra* (work-from-home accommodation granted in June 2022 for the Billing Manager position).

process. (fn. 4 *supra*.) Therefore, Plaintiff's claim that he was denied an ability to work-from-home because he is male is nonsensical.

Second, Plaintiff fails to plead facts to show that the individuals to whom he compares himself are proper comparators. (Cplt. ¶¶ 46-52); *Gong v. City Univ. of New York,* No. 18 CIV. 3027 (LGS), 2019 WL 952340, at *4 (S.D.N.Y. Feb. 27, 2019) (dismissing complaint where plaintiff failed to allege that comparators were similar in all material respects). Plaintiff does not allege that his comparators had the same supervisors or had the same responsibilities. *See Mesias v. Cravath, Swaine & Moore LLP*, 106 F. Supp.3d 431, 437 (S.D.N.Y. 2015) (to be a comparator the plaintiff must allege the two worked in the same department or had the same job responsibilities or supervisors); *Robinson v. Am. Int'l Grp., Inc.*, No. 008 Civ. 1724 (LAK), 2009 WL 3154312, at *4 (S.D.N.Y. Sept. 30, 2009) (an individual is not a comparator if they held a different job title from plaintiff). In fact, Plaintiff admits in his Complaint that he hired and supervised the women he alleges were treated better than he was. (Cplt. ¶¶ 34, 46-52); *Smalls v. Amazon.com Servs. LLC,* No. 20-CV-5492 (RPK)(RLM), 2022 WL 356432, at *6 (E.D.N.Y. Feb. 7, 2022) ("Supervisors are not similarly situated [to] employees."); *Garcia v. Barclays Cap., Inc.,* 281 F. Supp. 3d 365, 387 (S.D.N.Y. 2017) ("It is self-evident that a manager does not hold substantially the same position as the individuals she manages.")

Third, even if the women identified in the Complaint were deemed comparators at the pleading stage, Plaintiff's allegations actually show that women were treated worse than men regarding the in-office work requirement thus defeating his claim. According to Plaintiff, while Anderson Kill *granted* Plaintiff's requests to work from home, the Firm denied similar requests from women. For example, the Firm allegedly denied Robyn Hess's "request [to work from Newark]" (Cplt. ¶ 46); denied Wendy Epstein's request to work remotely (Cplt. ¶ 47); refused to

make either Pam Deolall's position or Sharon Miller's position remote thereby causing them to resign (Cplt. ¶ 48); "forced" Alexa Acevedo to return to the office (Cplt. ¶ 49); forced Margaret Green to commute into the office, which caused her to threaten to resign and then negotiate a two-day-per week office requirement (Cplt. ¶ 50); and forced Jessica Ramos to work in the office. (Cplt. ¶ 51.) Thus, Plaintiff's claim also fails at the pleading stage because his Complaint does not show that he was treated less favorably than women. *See Alvarado v. United Hospice, Inc.,* 631 F.Supp.3d 89, 115 (S.D.N.Y. 2022) (a plaintiff must show "an employer treated the plaintiff less favorably than a similarly situated employee outside his protected group").[7]

Fourth, the only individual Plaintiff alleges was permitted to work from home is Veronica (Ronnie) Mordan ("Ms. Mordan") after a hip replacement. (Cplt. ¶ 52(d).) Plaintiff does not include facts to show that she was similarly situated to Plaintiff (*e.g.* Ms. Mordan was immobile and Plaintiff was not). *Chima v. KX Technologies, LLC,* Case No. 3:21-cv-00801 (JCH), 2022 WL 13682064, at *10 (D.Conn. 2022) (rejected comparator analysis because the two employees were not similarly situated "in terms of remote work ability"). Even if they were deemed to be similarly situated for the purpose of the pleading, as shown, Anderson Kill *granted* Plaintiff's requests to work from home, thereby showing that Ms. Mordan and Plaintiff were treated the same.

Lastly, Plaintiff refers to the Firm's parental leave policy and a female employee (Christina Yousef) who was permitted to take two parental leaves and additional time off when she fell in a bathtub. (Cplt. ¶ 52(e)-(f).) The Firm's treatment of Ms. Yousef does not establish that Plaintiff

---

[7] Plaintiff's mention of two male employees and one male contractor is similarly puzzling, as the facts alleged do not show that Anderson Kill required men (more than women) to work in the office. (Cplt. ¶¶ 52 (a)-(c).) Plaintiff alleges Don Flynn "mysteriously left" after becoming ill and Mark Guercio was given disability leave and benefits and then left. *Id.* Plaintiff does not allege that either Mr. Flynn or Mr. Guercio requested to work from home or that the Firm denied such requests. Further, the male contractor who is not an employee is clearly not an appropriate comparator. (Cplt. ¶ 52(c)); *Andrus v. Dooney & Bourke, Inc.,* 139 F.Supp.3d 550 (D.Conn. 2015) (employee was not similarly situated to independent contractor for purposes of establishing *prima facie* case of discrimination.) Even if he was a comparator, Plaintiff does not allege this individual's contract was impacted by the pressure to work in the office.

was treated worse because Plaintiff does not allege Anderson Kill denied him parental leave.[8] To

the extent he tries to compare his three requests to work for home with Ms. Yousef's parental

leave, the two are not comparable requests. *Barbosa v. Continuum Health Partners, Inc.*, 716 F.

Supp. 2d 210, 219 (S.D.N.Y. 2010) (dismissing complaint where plaintiff "has not identified any

similarly situated individual, outside of her protected race and age classes, who was treated any

differently under *similar circumstances*.") (emphasis added.)

In sum, the allegations in the Complaint fail to state a claim of sex discrimination under

Title VII and NYSHRL and those claims should be dismissed.

### III.   PLAINTIFF'S SEX DISCRIMINATION CLAIM UNDER CITY LAW SHOULD BE DISMISSED

Like Plaintiff's federal and state sex discrimination claims, Plaintiff's discrimination

claims under NYCHRL also cannot survive a motion to dismiss. (Count IV.) To state a claim for

discrimination under the "more lenient" standard of the NYCHRL, a plaintiff must still allege facts

which allow the court to conclude that he was "treated less well" because of his membership in a

protected class. S*ee Romano v. A360 Media, LLC,* No. 1:20-cv-08988 (LTS)(OTW), 2023 U.S.

Dist LEXIS 10355, at \*13-14 (S.D.N.Y. Jan. 20, 2023) (citing *Nieblas-Love v. New York City*

*Hous. Auth.*, 165 F. Supp. 3d 51, 67 n.2 (S.D.N.Y. 2016).

Even with the more lenient standard, Plaintiff cannot maintain his sex discrimination claim.

As detailed above, Plaintiff alleges that the Firm treated male employees worse because of pressure

to conform to a stereotype that men must be physically in the office. (Cplt. ¶ 52.) As shown, all of

Plaintiff's alleged female comparators were treated worse or the same when compared to Plaintiff,

*i.e.*, they were denied work-from-home accommodations. (Cplt. ¶ 46, 47, 48, 49, 51.) In addition,

---

[8] Importantly, parental leave implies the employee-parent is *not* working when at home, but rather is taking a protected leave. This is different from a request to *work* from home.

the allegations in the Complaint fail to establish that any of these alleged comparators were similarly situated to Plaintiff. Therefore, Plaintiff has failed to allege facts from which a court could conclude that he was treated less well because of his gender and his sex discrimination claim under NYCHRL must be dismissed. *Ayers v Bloomberg, L.P.,* 165 N.Y.S.3d 554 (2nd Dep't. Mar. 16, 2022) (affirming dismissal of NYCHRL claim on a motion to dismiss because the plaintiff's amended complaint did not allege facts that could give rise to an inference of sex discrimination.)

## IV.  DONA KAHAN AND GEORGE ANDERSON SHOULD BE DISMISSED AS DEFENDANTS

Plaintiff asserts claims of sex discrimination, failure to accommodate, and retaliation against individual defendants Ms. Kahn and Mr. Anderson. (Count III, IV, V, VI.) Plaintiff's sex discrimination claims should be dismissed against all defendants, including Ms. Kahn and Mr. Anderson, for the reasons stated above. Further, all claims against the individual defendants Ms. Kahn and Mr. Anderson should be dismissed because Plaintiff fails to plead facts to support a claim against them individually.

Under both NYSHRL and NYCHRL, an individual may be held personally liable only if that person participates in the conduct giving rise to the discrimination. *See Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004) (citing *Tomka v. Seiler Corp.*, 66 F.3d 1295) (2d Cir. 1995) (individual liability only applies where a defendant "actually participates in the conduct giving rise to a discrimination claim."); *Schanfield v. Sojitz Corp. of America*, 663 F. Supp. 2d 305, 344 (S.D.N.Y. 2009). In addition, under the NYSHRL, plaintiff must show that an individual defendant qualifies as an employer, *i.e.*, the individual has an ownership interest in the relevant organization or the power to do more than carry out personnel decisions made by others. *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 365-66 (S.D.N.Y. 2012); *Cohn v. KeySpan Corp.*, 713 F. Supp. 2d 143 (E.D.N.Y. 2010).

Here, Plaintiff has not alleged that either individual defendant had an ownership interest in Anderson Kill, nor has he alleged that the individual defendants had authority to do more than carry out personnel decisions made by others. Plaintiff also has not alleged that either individual defendant participated in the alleged discriminatory conduct.

With respect to Mr. Anderson, the Complaint is devoid of any allegation that would support a finding of individual liability. Plaintiff does not allege any adverse action directly attributable to Mr. Anderson. Rather, he impermissibly relies on a group pleading to manufacture a claim against Mr. Anderson, *e.g.*, "the Firm went immediately to demoting Mr. Schwartz's position," and "Anderson Kill terminated Mr. Schwartz." (Cplt. ¶¶ 68, 90.) These generalized allegations are insufficient as a matter of law to establish liability against the individual defendants. *See*, *e.g.*, *Leykis v. NYP Holdings, Inc.*, 899 F. Supp. 986, 993-994 (E.D.N.Y. 1995) ("The conclusory allegations that 'defendants' (plural) participated in the allegedly discriminatory policies does not give [the individual defendant] notice of [the] conduct that gives rise to HRL liability."). Plaintiff's allegations that Mr. Anderson asked him to join an Executive Committee meeting and to "reengage at a limited level," occurred more than three months before Plaintiff's employment ended and does not support an inference of discriminatory or retaliatory animus by Mr. Anderson. (Cplt. ¶¶ 58-59, 62.)

The Complaint also fails to allege any facts to suggest that Ms. Kahn had any authority over Plaintiff's accommodation request or that she played any role in any employment decision regarding him. (*See*, *e.g.*, Cplt. ¶¶ 69, 77, 90.) In fact, the Complaint makes clear that Plaintiff asked, as an accommodation, for Ms. Ma to act on his behalf during the interactive process (Cplt. ¶ 65(i).) In turn, Ms. Kahn, in-house counsel, spoke on behalf of Anderson Kill. This does not make Ms. Ma a plaintiff or Ms. Kahn a defendant. Anderson Kill communicated the decisions of

the Firm's management through counsel because Plaintiff was communicating through counsel. (*See e.g.*, Cplt. ¶ 77, specifying that the decision communicated is from the firm's management.) Thus, Ms. Kahn should be dismissed as a named defendant. *See Cerrato v. Durham*, 941 F. Supp. 388, 396 (S.D.N.Y. 1996) ("Based on plaintiff's allegations, [individual defendant's] only involvement in the discrimination consisted of her communication of the "resignation" to plaintiff. This is not conduct that rises to the level of aiding and abetting, and is unlike the direct, purposeful participation of defendants whom other courts have found to be subject to individual liability as aiders and abettors.")

## V.   THE COURT SHOULD DENY PLAINTIFF ANOTHER OPPORTUNITY TO AMEND HIS COMPLAINT

Should this Court partially dismiss Plaintiff's claims against Defendants, Plaintiff should not be permitted a third chance to draft a viable Complaint. Although Fed. R. Civ. P. 15(a) requires leave to amend a complaint to be freely given when justice so requires, "it is well established that leave to amend a complaint need not be granted when amendment would be futile." *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [plaintiff's] causes of action is substantive; better pleading will not cure it…Such a futile request to replead should be denied.")

While this motion to dismiss is the Court's first opportunity to rule on the pleadings, Plaintiff already has had an opportunity to amend, after Defendants pointed out the deficiencies of his initial complaint in a "safe harbor" letter sent on September 12, 2023, invoking Rule 11 and demanding that Plaintiff withdraw his factually deficient Title VII claims. (Schmidt Decl. Ex. B.) In response, on October 27, 2023, Plaintiff filed the Amended Complaint that is the subject of this motion. (Dkt. No. 17.) Thus, even after Defendants made Plaintiff aware of his deficiencies, Plaintiff's Amendment did not cure them, and it is clear that a third bite at the apple would be

futile. *See Douglas v. Abrams Child. Books*, 2014 WL 12909009, at *10 (S.D.N.Y. Sept. 26, 2014)

("Plaintiff's failure to fix the defects, after being provided with notice of them, is alone sufficient

ground to deny leave to amend *sua sponte*.").

## MOTION TO DISQUALITY PLAINTIFF'S COUNSEL

Defendants also move to disqualify Plaintiff's counsel Ms. Ma from representing Plaintiff

in this Action.

Plaintiff alleges that Defendants failed to provide him a reasonable accommodation in

violation of the ADA, the NYSHRL, and the NYCHRL. According to the Complaint, on May 9,

2022, Plaintiff submitted a "reasonable accommodation note," asking, in part, that the "reasonable

accommodation process and communications [be] handled directly with his counsel [Ms. Ma] to

reduce his anxiety about this process." (Cplt. ¶ 65.) The Amended Complaint proceeds to outline

the numerous and extensive correspondences Ms. Ma had with Ms. Kahn, the Firm's in-house

counsel, who acted on behalf of the Firm in the interactive process, and it makes clear that Plaintiff

did not personally participate in that dialogue. (Cplt. ¶ 66-82.) Given Plaintiff's allegation that

Defendants "refused to engage in any meaningful mandatory interactive process and cooperative

dialogue," and Defendants' contention that Plaintiff, through Ms. Ma, abandoned the interactive

process, Ms. Ma's testimony about her conversations with Ms. Kahn will be critical to both

Plaintiff's claim and the Firm's defense. Thus, Ms. Ma is a necessary witness in this matter and

should be disqualified from serving as Plaintiff's counsel under N.Y. Rule of Professional Conduct

3.7.

The advocate-witness rule prohibits an attorney from representing a party in a case where

the attorney will or "ought to" be called as a witness. *See Rizzuto v. De Blasio*, 17-CV-7381

(ILG)(ST), 2019 WL 1433067, at *3-4 (E.D.N.Y. Mar. 29, 2019) (citing *Lamborn v. Dittmer*, 873

F.2d 522, 531 (2d Cir. 1989)); N.Y. Rules of Prof'l Conduct 3.7(a). Under this rule, "an attorney

may be disqualified from representing a client in an action when such attorney has knowledge of the facts or has participated in some of the events giving rise to the lawsuit and who, if allowed to participate in the case as both an advocate and a witness, would jeopardize the court's interest in ensuring that the litigation is conducted fairly and in conformity with prevailing ethical rules." *Rizzuto* at *3. Thus, disqualification is required when an attorney "is not only a necessary witness but *the* key witness for his [client]'s claims. *Id.* at *5 (emphasis in original). Here, the allegations in the Complaint show that Ms. Ma is an indispensable source of knowledge, and thus, will need to testify regarding her conversations about the parties' participation in the interactive process, and her abandonment of that process. Plaintiff admits in the Amended Complaint that Plaintiff requested the reasonable accommodation process be handled directly with Ms. Ma. (Cplt. ¶ 65(i).) Thus, Ms. Ma is "*the* key witness" for Mr. Schwartz because she is the only individual, on behalf of Plaintiff, with firsthand knowledge of any discussions between the parties regarding the central issue in this action. *See Falk v. Gallo*, 2010 N.Y. Slip Op 03864, 73 A.D.3d 685, 901 N.Y.S.2d 99 (2d Dep't 2010) (affirming defendants' motion to disqualify the plaintiffs' attorney since plaintiffs' attorney was the only person, other than the parties, who had knowledge of any discussions regarding the terms of the oral agreement underlying the litigation); *McGowan v. Stanley*, 2023 WL 2118084, at *2 (S.D.N.Y. 2023) (Cote, J.) (citing *Segal v. Five Star Elec. Corp.*, 84 N.Y.S.3d 777, 777 (1st Dep't 2018) (explaining that the movant must identify "specific issues requiring [counsel's] testimony, the weight of such testimony, or the unavailability of other sources of such evidence."). Unlike defendant's counsel in *McGowan*, who was not representing the defendant during the transaction at issue, Ms. Ma served as Plaintiff's spokesperson during the interactive process which is at the heart of Plaintiff's claims and is the only witness with firsthand knowledge of these conversations. Allowing Ms. Ma to serve as both an advocate and a witness

will "'blur [ ] the line between argument and evidence' thereby confusing the [jury]." *Estate of Dina Ehrlich v. David Wolf and Michael C. Wimpfheimer, Esq.*, 2013 WL 11236209, at *1 (N.Y. Sup. Ct. Dec. 06, 2013) (internal citations omitted).[9]

Plaintiff might argue that the advocate-witness problem can be remedied by allowing Ms. Ma to continue representing him in pre-trial proceedings and retaining separate counsel to represent him at trial, but this is not an acceptable solution. New York's version of the advocate-witness rule expressly prohibits a lawyer from acting as an advocate "before a tribunal," not just "at trial," as specified in the more lenient ABA Model Rule. Compare N.Y. Rule of Prof. Conduct 3.7(a) ("A lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact") and ABA Model Rule Prof. Conduct 3.7(a) ("A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness … ") (emphasis added). *See also Rizzuto*, 2019 WL 1433067, at *6 citing *Gleason v. Zocco*, 941 F. Supp. 32, 35-36 (S.D.N.Y. 1996) (disqualifying plaintiff's counsel at the beginning of the case due to his "extensive personal involvement in every aspect of the underlying controversies that led to this lawsuit"); *Fulfree v. Manchester*, 945 F. Supp. 768, 772 (S.D.N.Y. 1996) ("There is no justification for allowing [the attorney] to represent plaintiff during the pre-trial aspect of this litigation when it is clear that he may be a material witness at trial, and it is clear that he could be required to testify.")

To the extent Plaintiff might be temporarily inconvenienced by the need to retain new counsel if Ms. Ma were disqualified, he has only himself – or Ms. Ma – to blame. This is not the sort of "substantial hardship" that might otherwise override the mandate of the advocate-witness rule. There are many other lawyers in New York City who might serve as counsel for Plaintiff in

---

[9] Notably, Plaintiff's Complaint demands a jury trial.

this action. Yet he chose to be represented in this action by the one attorney who admittedly is the only person who communicated with Anderson Kill regarding the central issue in this dispute, his request for accommodation in returning to employment after his disability leave. Ms. Ma's critical role as a witness was clear from the outset, and "[i]t is relevant that one or both parties could reasonably foresee that the lawyer would probably be a witness." NY ST RPC Rule 3.7 [comment 4]; *see also Presser v. M. Spiegel & Sons Oil Corp.*, 106 A.D.2d 560, 560, 483 N.Y.S.2d 368, 369 (1984) ("From the very inception of this matter, it should have been 'obvious' to plaintiff's counsel that he 'ought to be called as a witness' and, therefore, he should not have accepted employment in the contemplated litigation."). Finally, given the necessity of Ms. Ma's testimony, removing her as Plaintiff's attorney at this early stage in the litigation is most appropriate. *See Noval Williams Films LLC v. Branca*, 128 F. Supp. 3d 781, 791 (S.D.N.Y. 2015).

## <u>CONCLUSION</u>

For the reasons set forth above, the Court should dismiss Plaintiff's Amended Complaint against Defendants Ms. Kahn and Mr. Anderson. The Court should also dismiss Plaintiff's sex discrimination claims (Count I, III, and IV). Finally, the Court should disqualify Ms. Ma from representing Plaintiff in this matter.

Date:  December 1, 2023
        New York, New York

Respectfully Submitted,


*/s/ Jean L. Schmidt*
_____
Jean L. Schmidt
Emily C. Haigh
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY 10022.3298
212.583.9600

*Attorneys for Defendants*